UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EMILY YVONNE THULIN, | |
| Plaintiff, | CASE NO. 12-cv-05559-BHS-JRC |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | Noting Date: June 07, 2013 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 11, 12, 13).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

After considering and reviewing the record, the Court finds that the ALJ appropriately concluded that plaintiff's elbow impairment, ADHD and other impairments and limitations did not prevent her from performing her past relevant work as a food demonstrator and a thrift store attendant and that she was not disabled pursuant to the Social Security Act.

Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, EMILY YVONNE THULIN, was born in 1984 and was 23 years old on the alleged date of disability onset of September 1, 2008 (*see* Tr. 93). Plaintiff was in special education through high school and received her diploma (Tr. 38). She has worked as an aisle checker in a thrift store and a teacher's aide in a day care (Tr. 39). She received security officer training through Job Corp, but was unable to find a job after training (Tr. 37-38). She worked part time for 3 months at Costco as a food demonstrator but quit when they cut her hours (Tr. 36-37).

Plaintiff has at least the severe impairments of attention deficit hyperactivity disorder (ADHD) and residuals from a left elbow fracture (20 CFR 416.920(c)) (Tr. 13). In July, 2008, two months prior to her alleged date of disability onset, plaintiff reported to an examining doctor that after she broke the left radial head of her elbow and had her cast removed, "she was told that her healing was suboptimal and it was mentioned that she may require surgery to improve the boney alignment" (*see* Tr. 180). However, plaintiff indicated that she was unable to afford further medical treatment for her elbow due to her

medical insurance (*see id.*). Plaintiff reported a deep ache in the elbow joint, made worse following heavy lifting, and an inability to straighten her elbow (*id.*). However, plaintiff also was in relatively good physical health, and reported having "recently went on a 10-mile bicycle ride, which did produce some soreness in the left elbow but no other difficulties" (*see id.*).

At the time of the hearing, plaintiff was living with her mother (Tr. 37). At her medical appointment two months prior to her alleged date of disability onset, she reported being independent for all mobility and activities of daily living without assistance, other than her difficulties carrying heavy objects and raking (*see* Tr. 180).

## PROCEDURAL HISTORY

On March 17, 2009, plaintiff protectively filed an application for supplemental security income ("SSI") pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 10, 93-99). Plaintiff's application was denied initially and following reconsideration (*see* Tr. 45, 46). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on November 30, 2010 (*see* Tr. 32-44). On December 9, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act since March 12, 2009, the application date (*see* Tr. 10-23). *See also* 20 C.F.R. §§ 416.335, 416.912(d).

On April 27, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on June 26, 2012 (*see* ECF No. 1).

Defendant filed the sealed administrative record regarding this matter ("Tr.") on September 5, 2012 (*see* ECF Nos. 8, 9). In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in the Residual Functional Capacity ("RFC") assessment by failing to make a detailed assessment regarding plaintiff's concentration difficulties; (2) Whether or not the ALJ erred in the RFC assessment by improperly rejecting the opinions of examining physician Dr. Ileana Howard; (3) Whether or not the ALJ erred in finding that plaintiff can perform her past relevant work without consulting an appropriate vocational resource; and (4) Whether or not the ALJ erred in relying on the Medical-Vocational Guidelines ("Guidelines") at step 5 (*see* ECF No. 11, p. 1).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not the Commissioner's decision is "'(1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

**(1)   Whether or not the ALJ erred in the RFC assessment by improperly rejecting the opinions of examining physician Dr. Ileana M. Howard, M.D.**

Plaintiff argues that the ALJ failed to credit fully opinions from examining doctor, Dr. Howard, who opined that plaintiff was limited to lifting and carrying 10 pounds. The ALJ concluded, in contrast, that plaintiff was capable of lifting and carrying 20 pounds occasionally (*see* Tr. 19). In doing so, the ALJ credited the opinions from the state agency, non-examining, medical consultants over the lifting and carrying limitations opined by Dr. Howard (*see id.* (*citing* exhibits 5F, 9F, *i.e.*, Tr. 193, 199, 220)). The ALJ failed to credit fully this contradicted opinion from Dr. Howard due to the date of the examination, which was two months prior to the alleged onset date; the objective

observations of Dr. Howard; and the lack of evidence other than Dr. Howard's opinion demonstrating that plaintiff's problems with her elbow persistent after the alleged onset date or persisted continuously for the minimum 12 months required.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with

other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

Plaintiff argues that the ALJ failed to credit fully opinions from examining doctor, Dr. Howard, who examined plaintiff on July 1, 2008 (Tr. 180-83). Dr. Howard conducted a physical examination, and provided numerous specific assessments regarding plaintiff's specific functional abilities related to the workplace (*see* Tr. 181-83). She opined that "the number of hours the claimant could be expected to stand or walk during an eight-hour workday are (sic) without restriction," as was the number of hours she could sit (*see* Tr. 183). Similarly, Dr. Howard opined that plaintiff suffered from no postural, manipulative, visual, communicative or workplace environmental limitations (*see id.*). However, Dr. Howard opined as follows: "The amount of weight the claimant could be expected to lift and carry both frequently and occasionally should be limited to 10 pounds secondary to pain with resisted left elbow movement" (*id.*).

The ALJ appears to have credited all of the opinions of Dr. Howard with the exception of the final one regarding lifting no more than ten pounds (*see* Tr. 18-19). The ALJ noted a finding that plaintiff's "limitation of full extension as demonstrated in the hearing room was barely perceptible" (*see* Tr. 19). The ALJ also noted that plaintiff "had symmetric and 5/5 motor strength in her bilateral upper extremities . . . ." (*see id.*).

The ALJ noted Dr. Howard's observations that plaintiff "could extend 0 degrees and flex 140 degrees with both elbows" and that there "was no flexion, contracture of the left elbow and pronation and supination were full and symmetric" (*see* Tr. 18; *see also* Tr. 182). All of these findings were noted by Dr. Howard.

The ALJ also included the following in his written decision:

> I give little weight to Dr. Howard's opinion that the claimant could only lift/carry 10 pounds occasionally and frequently because it was determined two months prior to the alleged onset date and over six months prior to the SSI application date. The record does not contain any other evidence to show that the claimant's left elbow problem persisted after the alleged onset date or continuously to have significantly interfered with the claimant's ability to engage in basic work activities for any continuous period of at least 12 months after the SSI application date.

(Tr. 19).

One reason provided by the ALJ for his failure to credit fully this opinion from Dr. Howard regarding lifting/carrying only 10 pounds was the fact that she provided this opinion two months prior to the alleged onset date (*id.*). Although Dr. Howard characterized plaintiff's elbow impairment as chronic on July 1, 2008, suggesting her opinion that it may persist, Dr. Howard's characterization does not demonstrate that plaintiff suffered from this limitation subsequent to that date.

The ALJ also noted various objective observations of Dr. Howard, such as plaintiff's range of motion in her elbow, and her demonstrated 5/5 motor strength in her bilateral upper extremities (*see id.*). The ALJ also noted a lack of evidence demonstrating that plaintiff's problems with her elbow persisted after the alleged onset date or persisted continuously for the minimum 12 months required. The Court also notes that elsewhere

in the ALJ's decision, the ALJ noted that plaintiff worked after she sustained her left elbow fracture (*see* Tr. 20; *see also* Tr. 118). Although the ALJ found that this work was not to the level of substantial gainful activity, it provided some evidence of plaintiff's ability to work.

The ALJ concluded that plaintiff "could have at least been able to lift/carry 20 pounds occasionally after the alleged onset date" (Tr. 19; *see also* Tr. 135). Although this conclusion by the ALJ conflicts with Dr. Howard's opinion, the Court concludes that the ALJ provided legitimate and specific reasons for failing to credit this opinion from Dr. Howard. *See Lester, supra*, 81 F.3d at 830-31.

**(2) Whether or not the ALJ erred in the Residual Functional Capacity ("RFC") assessment by failing to make a more detailed assessment regarding plaintiff's concentration difficulties.**

When evaluating the severity of plaintiff's mental impairments at steps two and three of the sequential disability evaluation process, the ALJ found that regarding plaintiff's concentration, persistence or pace, plaintiff had moderate difficulties (*see* Tr. 14 ). In doing so, the ALJ noted findings from Dr. Kathleen S. Mayers, Ph.D., including Dr. Mayers' assessment that plaintiff's concentration was good (*see id.*). Plaintiff complains that the ALJ failed to provide a more detailed assessment of her concentration difficulties when making the determination regarding her RFC.

The ALJ noted that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed  assessment by itemizing various functions contained in the broad categories found in paragraph B of the

adult mental disorders listings in 12.00 of the Listing of Impairments" (*id.* (*citing* SSR 96-8p)). The ALJ subsequently found that the exception to plaintiff's ability to perform light work was that she was "limited to non-detailed work and would be moderately limited in extended concentration" (*see* Tr. 14-15 (noting in a footnote that "For the purposes of Social Security Disability assessment, the ability to maintain concentration and attention for extended periods means the approximately two hour segments between arrival and first break, lunch, second break and departure" (internal citation omitted))).

The Court agrees with plaintiff's argument that the ALJ's assessment at the RFC determination with respect to plaintiff's concentration ability is not more detailed than his assessment at steps two and three of the sequential disability evaluation process. This occurred despite the ALJ's acknowledgement of the need for a more detailed assessment (*see* Tr. 14 (*citing* SSR 96-8p)). However, it is not clear that plaintiff has demonstrated the harm in this particular error. Plaintiff has not identified any specific further limitation that should have been found by the ALJ. The Court also notes that the ALJ gave "significant weight to Dr. Mayers's determination that the claimant's concentration and task persistence were good and her pace was average" (*see* Tr. 18).

Therefore, the Court concludes that this error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Although the ALJ did not provide a more detailed analysis, there is no evidence to suggest that his analysis would have changed at all had it been more detailed; and, furthermore, the ALJ's findings regarding plaintiff's difficulties with concentration appear to be somewhat generous to

plaintiff, as the ALJ found that plaintiff suffered from moderate limitations with respect to her ability to concentrate, despite the finding following examination (and supported by objective findings on examination) that plaintiff's concentration was "good" (*see* Tr. 14-15, 186, 187, 189).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ's legal error in the lack of more detailed explanation of the evaluation of plaintiff's concentration limitations with respect to her RFC is a harmless error.

**(3)     Whether or not the ALJ erred in finding that plaintiff can perform her past relevant work without consulting an appropriate vocational resource.**

At step four of the sequential disability evaluation process, the ALJ concluded that plaintiff could perform her past relevant work as a food demonstrator and a thrift store attendant both as actually and generally performed (*see* Tr. 20). Plaintiff complains that the ALJ does not cite to any evidence in the record, not even plaintiff's own statements, to identify the mental demands of plaintiff's past relevant work. However, although the ALJ may have erred by not elucidating his opinion, the error is harmless, as discussed below.

At step-four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20 C.F.R. § 404.1520(f).  If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes

and the evaluation process ends. *See id.* Plaintiff bears the burden to establish the inability to perform past work. *See Barnhart v. Thomas,* 540 U.S. 20, 25 (2003) (footnote omitted); *Pinto v. Massanari*, 249 F.3d 840, 844, 845 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)). As noted by the Ninth Circuit:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, the claimant can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).
> Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62; *see* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted] This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:
>     1. The actual functional demands and job duties of a particular past relevant job; or
>     2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

*Id.*

After indicating his finding regarding step four, the ALJ included the following in his written decision: "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform her past relevant work at least as a food demonstrator and a thrift store attendant, as actually and generally performed" (Tr. 20).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13

1    As pointed out by plaintiff, in the portion of the decision in which the ALJ finds
2  that plaintiff can perform her past relevant work as a food demonstrator and a thrift store
3  attendant, the ALJ does not explicitly discuss the physical and mental demands of
4  plaintiff's past relevant work and compare them with her RFC, and explain his findings
5  of fact (*see id.*). The Court agrees that the ALJ's discussion is conclusory and does not
6  appear to comply with Federal Regulations, Social Security Rulings or Ninth Circuit case
7  law. *See Pinto, supra*, 249 F.3d at 845. However, nevertheless, the ALJ's finding that
8  plaintiff was capable of performing her past relevant work as actually performed is
9  supported by substantial evidence in the record as a whole (*see* Tr. 20).
10
11   Plaintiff has not demonstrated how the ALJ's error in not explaining his step four
12  finding was harmful. In fact, plaintiff appears to miss the point of defendant's citation to
13  the record of plaintiff's self reported work history (*see* Response, ECF No. 12, pp. 10-11)
14  and fails to respond to defendant's argument that any error by the ALJ in step four was
15  harmless. For example, plaintiff's self-reported work history indicates that her prior work
16  as a thrift store attendant and food demonstrator both involved lifting less than 10 pounds
17  (*see* Tr. 118, 120, 122; *see also* Tr. 135). In addition, neither one of these jobs required
18  technical knowledge or skills (*see* Tr. 120, 122). As noted by defendant, because a
19  "claimant is the primary source for vocational documentation, [] statements by the
20  claimant regarding past work generally are sufficient for determining the skill level,
21  exertional demands and nonexertional demands of such work." *See* Social Security
22  Ruling, SSR 82-62, 1982 SSR LEXIS 27 at *6-*7, 1982 WL 31386. The Court also notes
23  that the Ninth Circuit had held that a vocational expert is not required at step four of the
24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14

sequential disability evaluation process. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Initially, it is plaintiff's burden to show that she can no longer perform her past relevant work. *See Thomas, supra,* 540 U.S. at 25; *Pinto*, *supra*, 249 F.3d at 844, 845.

For the reasons stated and based on the relevant record, the Court concludes that defendant's argument that the ALJ's step four determination is supported by substantial evidence in the record and that any error in step four is a "harmless" error is persuasive (*see* Response, ECF No. 12, p. 11; Reply, ECF No. 13, pp. 3-4).

(4) **Whether or not the ALJ erred in relying on the Medical-Vocational Guidelines ("grids") at step 5.**

Plaintiff contends that the ALJ erred in failing to call on the services of a vocational expert when making his step five determination that plaintiff was capable of performing other work existing in the national economy because the Guidelines or "grids" were inapplicable to her due to her non-exertional mental limitations (*see* Opening Brief, ECF No. 11, p. 7). Plaintiff also contends that the ALJ's step five findings were insufficiently detailed to carry the shifted burden to demonstrate the existence of other jobs in the national economy that plaintiff could perform.

The Court finds that with respect to the ALJ's step five findings, where the burden is shifted to the Administration, plaintiff's argument is persuasive. However, as the ALJ's step five determination is an alternative finding (Tr. 20), and this Court has upheld the ALJ's step four determination that plaintiff was capable of performing her past relevant work as actually performed, *see supra*, section 3, any error in step five is harmless.

CONCLUSION

Plaintiff has not demonstrated that her elbow impairment, her ADHD or any of her resulting limitations prevented her from performing her past relevant work as a food demonstrator and a thrift store attendant as actually performed.

Therefore, based on the stated reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 07, 2013, as noted in the caption.

Dated this 16th day of May, 2013.

J. Richard Creatura
United States Magistrate Judge